UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUNTER WILLIAMSON, <br><br>and<br><br>JOSHUA MICHAEL BRANHAM,<br><br>    Plaintiffs,<br><br>  v.<br><br>OFFICER SETH COX (#97)<br>in his individual capacity,<br>United States Park Police,<br><br>    Defendant. | Civil Action No. 12-0712 (ABJ) |

## MEMORANDUM OPINION

Plaintiff Joshua Michael Branham, a participant in the 2012 Occupy DC protest at McPherson Square ("the Square"), brings this action against United States Park Police Officer Seth Cox, in his individual capacity. Branham alleges that Officer Cox violated his Fourth Amendment rights by arresting him without probable cause. He seeks monetary damages and declaratory relief under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Officer Cox has filed a motion to dismiss or, in the alternative, for summary judgment on the grounds that he is entitled to qualified immunity. Since the Court finds that a reasonable officer in Officer Cox's position could have believed that Branham had violated the regulation prohibiting camping on national park land, 36 C.F.R. § 7.96(i), Officer Cox is protected by qualified immunity, and the Court will grant his motion for summary judgment.

## BACKGROUND

The facts of this case are largely undisputed. McPherson Square is a park within the National Park System. 36 C.F.R. § 7.96(g)(2)(ii)(B). For several months in 2011 and 2012, the Occupy DC protesters physically "occupied" McPherson Square. Def.'s St. of Material Facts as to which there is no Genuine Dispute ("Def.'s St. of Facts") [Dkt. # 11] ¶¶ 1–3;[1] *see also* Compl. [Dkt. # 1] ¶ 7. The aim of the participants of the Occupy DC movement was "to bring awareness to the[ir] concerns about United States economic policy, wealth disparity and the political process, through [a] peaceful, symbolic, round-the-clock occupation of the Square by a tent city." *Henke v. Dep't of the Interior*, 842 F. Supp. 2d 54, 56 (D.D.C. 2012) (internal quotation marks and citation omitted) (alteration in original). On January 27, 2012, the National Park Service ("NPS") issued a Camping Enforcement Notice indicating that it planned to begin enforcing NPS regulations that prohibited camping in national parks including McPherson Square. National Park Service Camping Enforcement Notice for McPherson Square and Freedom Plaza, Ex. 4 to Def.'s Mot. [Dkt. # 11-2]. The notice stated: "on or about noon, January 30, 2012, the United States Park Police will commence enforcement of the long-standing National Park Service (NPS) regulations prohibiting camping and the use of temporary structures for camping in McPherson Square . . . [I]f camping violations are observed, individual violators may be subject to arrest . . . ." *Id.* (emphasis omitted). NPS distributed this notice to individuals

---

1   Local Rule of Civil Procedure 7(h)(1) provides: "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Therefore, the Court will deem the paragraphs in defendant's statement of facts that were not disputed by plaintiff to be admitted. *See* Pl.'s St. of Issues as to which there is a Genuine Dispute [Dkt. # 15-1].

in the Square and told them what they needed to do to comply with the regulations. Reid Decl., Ex. 9 to Def.'s Mot. [Dkt. # 11-7] ¶¶ 2–3.[2]

On February 22, 2012, at approximately 3:40 a.m., Officer Cox observed Branham and Hunter Williamson, another participant in the Occupy DC protest, asleep in a zipped up tent in McPherson Square. Def.'s St. of Facts ¶ 17, citing Supplemental Criminal Incident R., Ex. 3 to Def.'s Mot. [Dkt. # 11-1].[3] Branham alleges that he and his tent mate were seated in chairs behind an "information table," but even according to the complaint they had fallen asleep. Compl. ¶ 7 (alleging that plaintiffs "were sitting upright in chairs behind an 'information table'

---

2   Plaintiff Branham objects to Sergeant Reid's declaration on the grounds that there is insufficient foundation to establish that the Sergeant had personal knowledge of all the facts discussed in the declaration. Pl.'s Mem. in Opp. to Def.'s Mot. ("Pl.'s Opp.") [Dkt. # 15] at 4. In paragraph 3 of the declaration, Sergeant Reid states that he personally supervised the distribution of the notices on a particular day. Reid Decl. ¶ 3. Therefore, the Court concludes that Sergeant Reid has provided facts showing that he had personal knowledge of the activities described in paragraph 3, which is the paragraph the Court primarily relies upon. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). In any event, the facts surrounding the distribution of notices are not germane to this opinion.

3   Plaintiff does not challenge the authenticity of the arrest report, but he objects to the introduction of the report on the grounds that: (1) the report contains inadmissible hearsay statements made by Hunter Williamson to the officers and statements made by Officer Cox to the two arrestees; and (2) there is insufficient foundation to establish that the report is based on the personal knowledge of Officer Cox. Pl.'s Opp. at 4. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). And while hearsay statements are generally inadmissible, the Court did not rely on Williamson's statements or Officer Cox's statements in assessing the grounds for arresting plaintiff, so the fact that those statements are set out in the report has no bearing on this opinion. The other information contained in the report could be presented in admissible form at trial through the officer's testimony or through the admission of those portions of the police records that satisfy Fed. R. Evid. 803(6). The report also supports a finding that Officer Cox had personal knowledge of the events detailed in the record because the report states that he personally witnessed and participated in them. *See* Supplemental Criminal Incident R.; *see also Randall v. Howard Univ.*, 941 F. Supp. 206, 212 (D.D.C. 1996) (stating that an individual had the necessary personal knowledge under Fed. R. Evid. 602 where his statements were partly based on his personal observations). In any event, plaintiff does not dispute the operative fact: that he was asleep in a tent when he was discovered by Officer Cox.

3

when they briefly and involuntarily fell asleep"). Officer Cox asked the two men to step out of the tent and arrested them for violating the camping regulation. Supplemental Criminal Incident R.; Compl. ¶ 8. Branham was released on the same day at approximately 6:20 a.m. Def.'s St. of Facts ¶ 21. The charges against him were later dismissed. Compl. ¶ 8.

On May 3, 2012, Branham sued Officer Cox in his individual capacity alleging that Officer Cox violated his Fourth Amendment rights by arresting him without probable cause to believe he had committed a crime. Compl. ¶ 17. He seeks monetary damages and declaratory relief under *Bivens*. *See* Compl. at Prayer for Relief ¶¶ 1–2. On October 12, 2012, Officer Cox moved to dismiss or, in the alternative, for summary judgment under Federal Rules of Civil Procedure 12(b)(6) and 56 on the grounds that he is protected by qualified immunity.[4] Def.'s Mot. to Dismiss or, in the alternative, for Summ. J. ("Def.'s Mot.") [Dkt. # 11]; Mem. in Supp. of Def.'s Mot. ("Def.'s Mem.") [Dkt. # 11] at 1–2. Branham opposes the motions on the basis that there was no probable cause to arrest him. Pl.'s Mem. in Opp. to Def.'s Mot. ("Pl.'s Opp.") [Dkt. # 15] at 5.

## STANDARD OF REVIEW

### I. Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

---

[4] Defendant also invokes Federal Rule of Civil Procedure 12(b)(1), which permits dismissal for lack of subject matter jurisdiction. But defendant's pleadings do not expressly argue that this Court lacks subject matter jurisdiction. It is possible that defendant considers qualified immunity as a jurisdictional defense, but that belief would be incorrect. *See Nevada v. Hicks*, 533 U.S. 353, 373 (2001) (rejecting the suggestion that "the qualified immunity inquiry [is] part of the jurisdictional inquiry," because "it is not true" and "[t]here is no authority whatever for the proposition that absolute—and qualified—immunity defenses pertain to the court's jurisdiction"). Therefore, the Court will not analyze defendant's qualified immunity defense under Rule 12(b)(1).

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## II. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

A motion to dismiss must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d); *see also Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (holding that district court's consideration of matters outside the pleadings converted the defendant's Rule 12 motion into one for summary judgment). Because both parties have submitted matters outside of the

pleadings, and the Court will consider them in the resolution of defendant's motion, the Court will treat the motion as one for summary judgment.

## ANALYSIS

Officer Cox contends that he is entitled to judgment as a matter of law on Branham's *Bivens* claim because he is protected by qualified immunity. Def.'s Mem. at 1–2; *see also Iqbal*, 556 U.S. at 672, 677 (stating that a plaintiff may not recover under *Bivens* if the defendant is entitled to qualified immunity). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Since the immunity exists to shield government officials who act lawfully from the rigors of suit, it should be granted or denied as early as the factual record allows. *Id.* Accordingly, it is appropriate to terminate actions on the basis of immunity "on a properly supported motion for summary judgment." *Butz v. Economou*, 438 U.S. 478, 508 (1978). Since the Court finds that there is no genuine dispute of material fact in this case, summary judgment is the appropriate forum to resolve Officer Cox's qualified immunity defense as a matter of law. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Once a defendant pleads a defense of qualified immunity, '[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . .'").

### I. The Standard for Qualified Immunity

The defendant bears the burden of pleading and proving the defense of qualified immunity. *Harlow*, 457 U.S. at 815. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). In each case, the court may decide which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The qualified immunity analysis "'turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012), quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). In other words, "the protection of qualified immunity is available if a reasonable officer could have believed that his or her actions were lawful, in light of clearly established law and the information the officers possessed." *Id.* (quotation marks, citations and alterations omitted). This standard, "[w]hen properly applied . . . protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 131 S. Ct. at 2085 (citation omitted).

Branham alleges that Officer Cox violated his Fourth Amendment rights by arresting him without probable cause. Compl. ¶ 17. "[A]n officer retains qualified immunity from suit if he had an objectively reasonable basis for believing that the facts and circumstances surrounding the arrest were sufficient to establish probable cause." *Wardlaw v. Pickett*, 1 F.3d 1297, 1304 (D.C. Cir. 1993), citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, even if the Court ultimately concludes that an arrest was not supported by probable cause, the arresting officer will still be immune from suit if a reasonable officer in his position "could have believed that probable cause existed to arrest [the plaintiff]." *Hunter*, 502 U.S. at 228.

**II. Officer Cox is entitled to qualified immunity because a reasonable officer in his position could have believed that there was probable cause to arrest Branham for violating the camping regulation.**

Police officers have probable to make an arrest if "at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably

trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The offense in this case involved camping in violation of a National Park Service regulation, which prohibits:

> [T]he use of park land for living accommodation purposes *such as sleeping activities*, or making preparations to sleep (including the laying down of bedding for the purpose of sleeping), or storing personal belongings, or making any fire, *or using any tents or shelter or other structure or vehicle for sleeping* or doing any digging or earth breaking or carrying on cooking activities. The above-listed activities constitute camping when it reasonably appears, in light of all the circumstances, that the participants, in conducting these activities, are in fact using the area as a living accommodation regardless of the intent of the participants or the nature of any other activities in which they may also be engaging.

36 C.F.R. § 7.96(i)(1) (1987) (emphasis added). Branham does not dispute that at the time of the arrest, he was asleep in a tent in McPherson Square. *See* Compl. ¶ 7; Pl.'s Opp. at 1. These facts provide a sufficient basis for an officer to reasonably believe that Branham was "using any tent[] or shelter or other structure . . . for sleeping" within the meaning of 36 C.F.R. § 7.96(i)(1).

But Branham points out that using a tent for sleeping "is not the *sine qua non* of 'camping' under the regulation; the *sine qua non* is, rather, the use of the park for living purposes." *United States v. Thomas*, 864 F.2d 188, 193 (D.C. Cir. 1988);[5] *see also* Pl.'s Opp. at 5. The regulation states that the activities that are offered as examples of ways in which one might utilize park land for living accommodation purposes will constitute camping "when it reasonably appears, in light of all the circumstances, that the participants, in conducting these activities, are in fact using the area as a living accommodation regardless of the intent of the

---

5 In *Thomas*, the court upheld a conviction for a violation of the camping regulation based on evidence that the defendant had been lying in Lafayette Park "on top and within bedding materials throughout the night, for a one-week period, without evidence of any other sleeping quarters," while "surrounded by minor items of property and their literature, which was covered by plastic." 864 F.2d at 191–93.

participants or the nature of any other activities in which they may also be engaging." 36 C.F.R. § 7.96(i)(1). There is a "distinction between casual sleeping and 'sleeping activities' sufficient to make it 'reasonably appear[], in light of all the circumstances, that the participants, in conducting these activities, are in fact using the area as a living accommodation.'" *United States v. Musser*, 873 F.2d 1513, 1518 (D.C. Cir. 1989) (citation omitted) (alternation in original); *see also* 47 Fed. Reg. 24,299, 24,301 (1982) ("Short-time, casual sleeping which does not occur in the context of using the park for living accommodations" does not fall within the purview of the camping regulation.).

Branham asserts that Officer Cox did not have "even arguable probable cause" to believe that he was using the Square for living purposes because the evidence in this case shows only that he was casually sleeping at the time of the arrest. Pl.'s Opp. at 5. This argument is identical to the one that the D.C. Circuit rejected in *Musser*. In *Musser*, the defendant was convicted for violating the camping regulation based on evidence that he was "stretched out on a wooden pallet with bedding material under him and over him, covered by plastic, a makeshift pillow under his head, and his belongings around him, asleep for at least two hours" in Lafayette Park. 873 F.2d at 1519. He challenged his conviction on the grounds that the evidence proved at most that he had taken a "two-hour snooze," which constituted permitted casual sleeping. *Id.* at 1518. In rejecting this argument, the D.C. Circuit explained that "the camping regulation is not limited to long-term living accommodations. Overnight camping is as forbidden as is week-long or longer camping." *Id.* at 1519. The court then upheld the conviction because based on the evidence, "it reasonably appeared that [the defendant] was in fact using the Park as his living accommodations for a single night." *Id.*

Branham argues that unlike in *Thomas* and *Musser*, the totality of the circumstances of this case do not support a reasonable conclusion that he was using the Square for living purposes: (1) he was sleeping upright in a chair in an information booth, not stretched out or lying down on or in bedding material; (2) he did not have a blanket on his lap or near him; (3) he was not storing any of his belongings nearby; and (4) he had alternative locations where he could sleep. Pl.'s Opp. at 5; Branham Decl., Ex. 2 to Pl.'s Opp. [Dkt. # 15-2] ¶¶ 2–5; Tr. of Mots. Hr'g ("Tr.") at 13:20–14:10.

The Court considers the fourth factor to be entirely irrelevant to the reasonableness of the officer's belief; having a residence elsewhere is not in any way inconsistent with camping. And, even though some of the factors that were relevant in *Thomas* and *Musser* are not as strong here because the young men in the tent were more vertical than horizontal, and they were sleeping in chairs and eschewing more comfortable bedding material, this case does not require the Court to find what was needed in those cases: evidence supporting a criminal conviction beyond a reasonable doubt. *See Musser*, 873 F.2d at 1519; *Thomas*, 864 F.2d at 191, 193. As a defendant in a civil action, Officer Cox does not have to prove "beyond a reasonable doubt" that Branham used the Square for living purposes. To prevail on his qualified immunity defense, he need only show that his conclusion that Branham was camping at the time of the arrest was objectively reasonable.

The Court is satisfied that Officer Cox has met this lower standard because, viewing the evidence in the light most favorable to Branham, a reasonable person could conclude that a person who was asleep, in a tent that was zipped, at 3:40 in the morning appeared to be using McPherson Square for living purposes at least for that single night. *See* Def.'s Statement of Facts ¶¶ 12, 17, 20; *see also* Supplemental Criminal Incident R.

Branham nonetheless contends that summary judgment is not appropriate in this case because there is a genuine dispute as to whether he was sleeping overnight. Pl.'s St. of Issues as to which there is a Genuine Dispute [Dkt. # 15-1] ¶ 4. He notes that at the time of the arrest, he was sitting behind the table in the Occupy DC Information Booth, which "is not where one would expect a person to be sleeping if they were going to be deliberately sleeping in the park." Tr. at 14:5–:6; *see also* Compl. ¶ 7; Branham Decl. ¶ 2. This argument fails for several reasons. The Supreme Court has interpreted the camping regulation to include a ban on "overnight sleeping." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 295 (1984). However, an individual is not required to complete a full night's sleep to violate the regulation. *See* 36 C.F.R. § 7.96(i)(1) (prohibiting making preparations to sleep); *United States v. Semple*, 702 F. Supp. 295, 300 (D.D.C. 1988) (explaining that the *Clark* Court's reference to overnight sleeping may excise "mere napping on a sunny afternoon" from the regulation's purview, but that language does not require a person to sleep "from sunset to sunrise without interruption" to violate the regulation). Second, the plaintiff and his colleague had closed themselves off to others, sealing the tent with a zipper.

"'Overnight sleeping,' while it may mean more, means at least that sleep necessary for a human being to sustain his or her life over time in reasonably good health." *Semple*, 702 F. Supp. at 301. This standard is met here because Officer Cox observed Branham sleeping in the middle of the night – the time period during which most people get the sleep necessary to sustain their lives. *See Musser*, 873 F.2d at 1518–19 (upholding a conviction for violating the camping regulation although the police only saw the defendant sleeping for two hours in the middle of the night). Moreover, whether Branham intended to fall asleep in the Square or whether he really meant to be working in the Occupy DC Information Booth around the clock is not relevant to the

"camping" analysis. *See* 36 C.F.R. § 7.96(i)(1) (stating that individuals can be held liable for camping "regardless of the intent of the participants or the nature of any other activities in which they may also be engaging").[6] Therefore, neither of those factors undermines the objective reasonableness of Officer Cox's conclusion that there was probable cause to arrest Branham for "camping."

## CONCLUSION

Accordingly, the Court will grant Officer Cox's motion for summary judgment because it was reasonable for him to believe that he had probable cause to arrest Branham for camping in McPherson Square, and he is thus entitled to qualified immunity. A separate order will issue.

*/s/ Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: July 9, 2013

---

[6] Additionally, a reasonable officer could conclude that it was unlikely that two individuals who were supposed to be actively manning an information station would both be asleep at the same time. The fact that both of them were found to be asleep supports a reasonable belief that the individuals were intending to use the Square for their living accommodations that night.